IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**AMERICAN HUMANIST ASSOCIATION and**
**DESSA BLACKTHORN**                                                **PLAINTIFFS**

**V.**                        **CASE NO. 3:14-CV-3126**

**BAXTER COUNTY, ARKANSAS and**
**MICKEY PENDERGRASS, Baxter County Judge,**
**in his official and individual capacities**                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are the Motion for Summary Judgment filed by Defendants Baxter County, Arkansas, and Baxter County Judge Mickey Pendergrass (Doc. 18), the Brief in Support of that Motion (Doc. 19), and the Statement of Undisputed Material Facts in support of that Motion (Doc. 20); and Plaintiffs American Humanist Association's ("AHA") and Dessa Blackthorn's Response in opposition to that Motion (Doc. 21), Memorandum of Law in Support of their Response (Doc. 22), and Response to Defendants' Statement of Undisputed Material Facts (Doc. 23). Also currently before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 15), Memorandum of Law in Support of their Motion (Doc. 16), and Statement of Material Facts as to Which There Is No Material Dispute (Doc. 17); Defendants' Response in opposition to Plaintiffs' Motion (Doc. 26) and Response to Plaintiffs' Facts in Support of their Motion (Doc. 25); and Plaintiffs' Reply in support of their Motion (Doc. 27). For the reasons given below, both summary judgment motions are **GRANTED IN PART AND DENIED IN PART**. Specifically, Plaintiffs are awarded summary judgment on their claims against Baxter

1

County, Arkansas, and Judge Pendergrass in his official capacity, but Plaintiffs' claims against Judge Mickey Pendergrass in his individual capacity are dismissed with prejudice.

## I. BACKGROUND

For at least the past forty years, a nativity scene depicting the birth of Jesus Christ has been displayed on the Baxter County Courthouse lawn during the Christmas season. The crèche is owned by a Baxter County attorney named Rick Spencer who is not a party to this action. This nativity display has long been accompanied by a Christmas tree, and in recent years it has acquired a few additional figures depicting Santa Claus and reindeer. Controversy began to swirl around the display in late 2013, when several requests were made of Judge Pendergrass to permit the display of a "Happy Solstice" banner next to the crèche. Judge Pendergrass denied these requests, and in January 2014 he received a letter from the AHA contending that the display violated the Establishment Clause and asking him to remove it. In October 2014, the AHA sent Judge Pendergrass a second letter, threatening to file a lawsuit if a similar display were erected by the County during the looming holiday season.

One month later, Baxter County and the Mountain Home Chamber of Commerce entered into an agreement, under which the Chamber of Commerce would pay Baxter County $1.00 to lease the northwest corner of the Baxter County Courthouse property, for the explicitly stated purpose of erecting a nativity scene display. Judge Pendergrass signed the lease agreement on behalf of Baxter County, and the president of the Chamber of Commerce, Eddie Majeste, signed on behalf of the Chamber of Commerce. The crèche was again erected on the same spot during the 2014 Christmas season, but this time with a novel twist. On December 2, 2014, the Baxter County Quorum Court

2

unanimously passed "a resolution approving the display of a crèche accompanied by a disclaimer to be placed on the courthouse property during the Christmas season." The disclaimer was posted with the crèche, and read:

> During the Holiday Season, the County of Baxter salutes liberty. Let these festive lights and times remind us that we are keepers of the flame of liberty and our legacy of freedom. Whatever your religion or beliefs, enjoy the holidays. This display is owned and erected by private citizens of Baxter County.

True to the October 2014 letter, the AHA and Ms. Blackthorn initiated this lawsuit by filing their Complaint (Doc. 1) on December 23, 2014, alleging that by erecting the display, Baxter County and Judge Pendergrass have violated the Establishment Clause of the First Amendment to the United States Constitution and 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief, along with nominal damages, costs, expenses, and attorneys' fees. Defendants filed their Answer (Doc. 10) a month later, denying that they had violated any laws, denying that Plaintiffs were entitled to any relief, and asserting a variety of affirmative defenses. Several months of discovery ensued, and in early July 2015, both sides moved for summary judgment. Both summary judgment motions are now ripe for decision.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, cross-motions for summary judgment are filed, each motion should be reviewed in its own right, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also*

3

*Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). The moving party bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). If the moving party meets this burden, then the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). These specific facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

### A. Standing

The first requirement in any federal case is that the plaintiff have what is called "standing" to bring the case. *Tarnsey v. O'Keefe*, 225 F.3d 929, 934 (8th Cir. 2000). Essentially, this means that the plaintiff must have "alleged such a personal stake in the outcome of the controversy" as to guarantee that the parties to the case are actually adverse to each other. *See Baker v. Carr*, 369 U.S. 186, 204 (1962). This requirement stems in part from Article III of the United States Constitution, which limits the jurisdiction of federal courts to specific types of "cases" and "controversies." U.S. Const. art. III, § 2. A party invoking federal jurisdiction bears the burden of showing that it has standing to bring its claims. *Schanou v. Lancaster Cty. Sch. Dist.*, 62 F.3d 1040, 1045 (8th Cir. 1995). Here, that burden applies to Plaintiffs American Humanist Association and Dessa Blackthorn.

4

The United States Supreme Court has explained that in order for a plaintiff to have Article III standing, the plaintiff must show three things: (1) that it suffered an "injury in fact" which was both "concrete and particularized" and "actual or imminent"; (2) that there is a causal connection between the injury it suffered and the conduct of which it complains; and (3) that it is "likely," rather than merely "speculative," that a favorable decision by the court would redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In addition to these Article III requirements, certain so-called "prudential principles" must also be satisfied in order for a plaintiff to have standing. Included among these are the requirements that a plaintiff assert its own rights or interests rather than those of a third party, that the asserted grievance not be abstract and generalized, and that the grievance fall "within the zone of interests to be protected . . . by the . . . constitutional guarantee in question." *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982).

An organization like AHA "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996)). Defendants contend that Ms. Blackthorn, who is a member of AHA, cannot show that she has suffered an injury sufficient to satisfy standing requirements. Therefore, Defendants argue, Ms. Blackthorn and AHA both lack standing to bring this lawsuit.

In cases where a state actor is alleged to have violated the Establishment Clause of the First Amendment by erecting a religious display, an individual such as Ms. Blackthorn can show that she has suffered an injury for purposes of standing merely by demonstrating that she experienced "direct and unwelcome personal contact with the alleged establishment of religion." *See id.* at 1023. There is no dispute that Ms. Blackthorn had direct contact with the display at issue in this case, but Defendants argue that this contact was not unwelcome. In particular, Defendants reason that since Ms. Blackthorn testified in her deposition that she is a "Christian sympathizer" who has "nothing against Christians" and who displays a nativity scene in her own house, she must not be offended by the nativity display on the County's courthouse lawn.

However, this argument misapprehends the nature of Ms. Blackthorn's grievance. Ms. Blackthorn, a Unitarian Universalist, makes it quite clear in her deposition that what she finds unwelcome is not Christianity itself, but rather her perception that her *government* has established Christianity as its preferred religion by displaying the nativity scene without also displaying holiday celebrations that are predominantly secular or representative of other faiths.[1] Since Ms. Blackthorn's deposition leaves no doubt that she has come into direct and unwelcome personal contact with the display in question, Defendants' argument that Plaintiffs cannot show injury for purposes of standing fails.

---

[1] "Christianity is not the only religion in this town. And December includes many celebrations from different types of religions all over the world. A lot of people in this county celebrate something completely different other than the birth of Christ." (Doc. 20-1, p. 26). "As somebody who believes in equal rights, human rights, especially constitutional rights, I feel like, as a citizen, that [nativity display on the courthouse lawn] harms me in a certain way because I am a citizen of this country." *Id.* at 70-71.

6

## B. Mootness

Even when a plaintiff has standing to bring a particular claim in federal court, that claim may nevertheless be dismissed if it is moot—which Defendants argue is the case here. "Mootness" has at times been defined as "the doctrine of standing set in a time frame," in that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). However, this definition of mootness "is not comprehensive," and one of the exceptions to mootness arises "when the defendant's allegedly unlawful activity is capable of repetition yet evading review." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). This exception "applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks omitted).

Defendants argue that Plaintiffs' claims are moot in this case, and that the capable-of-repetition-yet-evading-review exception does not apply, because "the display is not currently in place and there is no proof to show that any display will be the same in 2015 as it was in 2014." (Doc. 19, p. 6). But this argument does not accurately reflect that the standard "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent." *Friends of the Earth, Inc.*, 528 U.S. at 189. The parties asserting mootness—here, Defendants—bear a "heavy burden of persuading" this Court that it is

7

"absolutely clear" that "the challenged conduct cannot reasonably be expected to start up again." *Id.* (internal alterations omitted). Defendants do not come close to meeting this "formidable burden," *id.*, as they offer nothing in support of their argument beyond Ms. Blackthorn's deposition testimony that she does not know whether the nativity scene will be displayed on the courthouse property again this year, and deposition testimony by the owner of the crèche that he has plans to make some additions to the display. Given the annually recurring and short, seasonal nature of the challenged conduct here, stretching back for forty years, this case is a textbook example of the capable-of-repetition-yet-evading-review exception to the mootness doctrine. Indeed, as Plaintiffs correctly observe, "[v]irtually every holiday display case would lose on mootness grounds if the Court accepted Defendant's argument." (Doc. 22, p. 9).

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Service Emps. Intern. Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). That is precisely the situation here. Defendants' mootness argument fails.

### C. State Action

When a plaintiff brings a lawsuit under 42 U.S.C § 1983 alleging the deprivation of a constitutional right, the plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "With a few exceptions, . . . constitutional guarantees of individual liberty . . . do not apply to the actions of private entities." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991).

8

Defendants argue that there is no state action here because the challenged nativity scene is privately owned and was displayed on property that was leased to a private entity.

"There is no single test for determining when there is state action, particularly when the dispute involves the First Amendment." *Wickersham v. City of Columbia, Mo.*, 371 F. Supp. 2d 1061, 1076 (W.D. Mo. 2005). The Supreme Court has explained that "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). This is a "necessarily fact-bound inquiry," *id.* at 298 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)), and there is "a host of facts that can bear on the fairness of" attributing ostensibly private conduct to a state actor, *id.* at 296. For example, the Supreme Court has held in a variety of cases:

> that a challenged activity may be state action when it results from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, . . . when a private actor operates as a willful participant in joint activity with the State or its agents, . . . when it is controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control.

*Id.* (internal quotation marks and citations omitted).

There is no dispute that on December 10, 2014, Judge Pendergrass signed and approved a unanimous resolution of the Baxter County Quorum Court entitled "A RESOLUTION *APPROVING* THE DISPLAY OF A CRECHE ACCOMPANIED BY A DISCLAIMER TO BE PLACED ON THE COURTHOUSE PROPERTY DURING THE CHRISTMAS SEASON." (Doc. 20-3) (capitalization in original, italics added). This

9

resolution explicitly stated that "Baxter County has entered into a lease agreement with the Mountain Home Chamber of Commerce for the northwest corner of the courthouse square *for the purposes of this display.*" *Id.* (emphasis added). Furthermore, there is no dispute that for at least forty years prior to the execution of this lease in 2014, the challenged crèche was annually displayed on the courthouse property during the winter holiday season. Under these undisputed facts, the only reasonable conclusion is, at a minimum, that Baxter County has provided "significant encouragement, either overt or covert," in the crèche's display on the courthouse property, that the Chamber of Commerce and the owner of the crèche have each "operate[d] as a willful participant in joint activity with" the Baxter County government in displaying the crèche on the courthouse property, and that the display of the crèche on the courthouse property is not only "entwined with [Baxter County] governmental policies" but *enthusiastically* so entwined. Defendants' argument that there is no state action fails.

### D. Establishment Clause

Having disposed of the preliminary justiciability issues, the Court now turns to the substantive question of whether the challenged nativity display violates the Establishment Clause of the First Amendment. Both sides have moved for summary judgment on this issue.

The Supreme Court has identified three requirements that must be met in order for a state action to survive an Establishment-Clause challenge. *First*, the challenged action must have a secular *purpose*. *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). *Second*, the primary or principle *effect* of the challenged action must be one that neither advances nor inhibits religion. *Id.* *Third*, the challenged action must not foster an excessive

government *entanglement* with religion. *Id.* at 613. "State action violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987).

The Court will begin its analysis of the instant case with the "purpose" prong of the *Lemon* test. Unsurprisingly, Plaintiffs argue this prong is not satisfied, and Defendants disagree. Defendants rest heavily on the Supreme Court's observation in the 1984 case of *Lynch v. Donnelly* that it had "invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded that there was no question that the statute or activity was motivated *wholly* by religious considerations." 465 U.S. 668, 680 (1984) (emphasis added).

Defendants cite only two cases other than *Lynch* in the portion of their Response to Plaintiff's Motion dealing with the Establishment Clause. One is *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573 (1989), and the other is *American Civil Liberties Union v. City of Florissant*, 186 F.3d 1095 (8th Cir. 1999). *Lynch*, *Allegheny*, and *Florissant* appear to be the only Supreme Court or Eighth Circuit cases dealing, *inter alia*, with nativity displays on public property. Therefore, Defendants assert that these cases are controlling, and argue that the contents and location of the instant crèche are more factually similar to the crèches that were held not to violate the Establishment Clause in *Lynch* and *Florissant* than to the crèche that was held to be in violation of the Establishment Clause in *Allegheny*.

However, *Allegheny* and *Florissant* were concerned exclusively with the *Lemon* test's "effect" prong; neither has anything at all to say about how the "purpose" prong applies to nativity displays on public property. *See Allegheny*, 492 U.S. at 589 ("Because

11

the impermissible effect of endorsing religion was a sufficient basis for holding each display to be in violation of the Establishment Clause . . . the Court of Appeals did not consider whether either one had an impermissible purpose . . . ."), 594 n.45 ("There is no need here to review the applications in *Lynch* of the 'purpose' and 'entanglement' elements of the *Lemon* inquiry, since in the present action the Court of Appeals did not consider these issues."), 597 ("[O]ur present task is to determine whether the display of the crèche and the menorah, in their respective 'particular physical settings,' has the effect of endorsing or disapproving religious beliefs."); *Florissant*, 186 F.3d at 1097 n.2 ("The effect, not the purpose, is in question. The parties stipulated that testimony would be given that . . . 'there was never a purpose to endorse religious beliefs or offend users of the Civic Center.'"). And although it is true that *Lynch* indicated a government action would not fail the "purpose" prong unless the motivation was *wholly* religious, the Supreme Court has made it abundantly clear, post-*Lynch*, that it now views the appropriate inquiry under the "purpose" prong simply to be whether the "primary" or "preeminent" purpose of the challenged activity is religious. *McCreary Cty., Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 864 (2005) (citing *Edwards v. Aguillard*, 482 U.S. 578, 590, 594 (1987)); *see also id.* at 865 & n.13 (explicitly rejecting the notion "that the purpose test is satisfied so long as any secular purpose for the government action is apparent" because such an approach "would leave the purpose test with no real bite, given the ease of finding some secular purpose for almost any government action").

Ultimately, then, this Court believes that where the "purpose" prong of the *Lemon* test is concerned, there is very little, if any, guidance to be gleaned from *Lynch*, *Allegheny*,

and *Florissant*.  Instead, the Court will apply the rule articulated in *McCreary*, and determine whether there is any material factual dispute as to whether Defendants' primary or preeminent purpose in erecting the instant crèche was a religious or secular one. Fortunately, no mind-reading is required for this inquiry; rather, the inference as to whether a government action has a "predominantly religious purpose" can be made as a matter of "commonsense" from "openly available data." 545 U.S. at 862-63.  Under this analysis, "although a [state actor]'s stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *Id.* at 864.

The record leaves no room for doubt that, as the owner of the crèche stated during his deposition, "[o]bviously the purpose of it was to celebrate Christmas." (Doc. 15-2, p. 16).[2] The record also leaves no room for doubt that the purpose of this celebration was predominantly religious in nature. There is no dispute that in December 2013, Judge Pendergrass denied at least two separate requests to install a banner near the crèche stating "Happy Solstice." (Doc. 1, ¶¶ 17, 18; Doc. 10, ¶ 4 (admitting paragraphs 17 and 18 of the Complaint); Doc. 15-1, p. 85). Furthermore, there is no dispute that in November 2014, roughly one month after receiving from one of the plaintiffs in this case a threat of litigation over the crèche, Baxter County leased[3] a corner of the courthouse lawn to the

---

[2] In their Answer, Defendants contend that "[t]he County has a legitimate public, secular interest in promoting seasonal holiday displays in the center of the county" so as to "bring consumers into the county seat city." (Doc. 10, ¶ 15). However, the record does not contain any evidence that there was ever any economic motivation for Defendants' decision to display the crèche on the courthouse lawn.

[3] Plaintiffs argue that the lease is invalid as it was not created pursuant to lawful procedures. The Court believes that under the facts of this case, the lease's validity or lack thereof has no impact on its value as evidence of its parties' religious purpose;

13

Chamber of Commerce for the amount of $1.00 for the "stated purpose of erecting a nativity scene display." (Docs. 1-8 & 1, ¶ 37; Doc. 10, ¶ 4 (admitting paragraph 37 of the Complaint)). Finally, there is also no dispute that the Chamber of Commerce's president "understand[s] the display to be fundamentally religious in nature," (Doc. 15-3, p. 11), and that he agreed on behalf of the Chamber of Commerce to enter into the lease at the request of Judge Pendergrass, *id.* at pp. 9–10; Doc. 15-1, pp. 45, 47.

These undisputed facts speak for themselves,[4] and—even when viewing them in the light most favorable to Defendants—there simply is no reasonable inference to be drawn from them other than that in 2014, if not earlier, the County's purpose in erecting the crèche was a predominantly religious one. It is true that the County added the aforementioned disclaimer to the display last December, telling viewers: "Whatever your religion or beliefs, enjoy the holidays. This display is owned and erected by private citizens of Baxter County." However, although this fact might be significant under the "effect" prong of the *Lemon* test, in the Court's view it has very little probative value as to the County's purpose in erecting the crèche in the first place; publicly pluralistic language does not create a material factual dispute as to purpose when behavior behind closed doors is consistently sectarian. Since the "purpose" prong is not satisfied here, the Court concludes that Plaintiffs have shown a violation of the Establishment Clause, and no inquiry into the other two prongs of the *Lemon* test is necessary.

---

therefore the Court will not make any determination as to whether the lease was a valid legal instrument.

[4] The Court has taken care in this Opinion and Order to rely only on evidence that would be admissible at trial and facts that are agreed to by the parties. *See Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993).

### E. Qualified Immunity

Finally, Defendants argue that even if the Court finds an Establishment Clause violation to have occurred, Judge Pendergrass is nevertheless entitled to qualified immunity on the claim that Plaintiffs brought against him in his individual capacity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Court has already found in the preceding Section of this Order that Judge Pendergrass violated the Establishment Clause of the First Amendment by erecting the crèche with a primary or preeminent religious purpose. However, the Court also observed *supra* that there do not appear to be any cases from the Supreme Court or the Eighth Circuit applying the "purpose" prong of the *Lemon* test to nativity displays, except for the 1984 Supreme Court case of *Lynch v. Donnelly*, 465 U.S. 668, which—again, as noted above—articulated a test under the "purpose prong" that underwent significant evolution in subsequent Supreme Court Establishment Clause cases.

Given this state of affairs, it would not be unreasonable for a person in Judge Pendergrass's position to have erroneously believed that the "purpose" prong of the *Lemon* test, as applied to nativity displays on government property, could be satisfied even if the predominant purpose of the display was a religious one, so long as it was also attended by some slight additional secular purpose such as depicting the origins of the Christmas holiday. *See id.* at 681 & n.6. Furthermore, although the Court did not reach the question of whether the instant crèche violates the other two prongs of the *Lemon* test, the Court finds that even if it were to have ruled the instant crèche to have violated

either of those prongs, the law under those prongs as applied to nativity displays is not sufficiently clearly established to overcome qualified immunity.  This Court is not aware of a single Supreme Court or Eighth Circuit case holding a nativity display failed to satisfy the "entanglement" prong of the *Lemon* test.  And the sole binding authority to have held a nativity display to be in violation of the *Lemon* test's "effect" prong involved a crèche that was unaccompanied by any secular elements at all, *Allegheny*, 492 U.S. at 598, which indisputably is not the case here.  Accordingly, Judge Pendergrass is entitled to qualified immunity from the claims brought against him in his individual capacity.  *Cf. Mullenix v. Luna*, No. 14-1143, slip op., at *8 (U.S. Sup. Ct. Nov. 9, 2015) (per curiam) ("In any event, none of our precedents 'squarely govern' the facts here.").

### F. Relief

Having established (pun intended) a violation of the Establishment Clause and the parties against which relief may be obtained, all that remains is to determine the relief to which Plaintiffs are entitled.  Declaratory relief is proper here under 28 U.S.C. § 2201.  *See Alsager v. Dist. Ct. of Polk Cty., Iowa (Juv. Div.)*, 518 F.2d 1160, 1163-64 (8th Cir. 1975).  Plaintiffs may recover nominal damages in the amount of one dollar for violations of their First Amendment rights even without proof of actual injury.  *Risdal v. Halford*, 209 F.3d 1071, 1072-73 (8th Cir. 2000).  And having obtained success on the merits, Plaintiffs are also entitled to injunctive relief because (1) they have suffered irreparable harm, (2) the harm they have suffered far exceeds any injury an injunction might inflict on other parties, and (3) the public obviously has an enormous interest in seeing its government comply with the First Amendment.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs American Humanist Association's and Dessa Blackthorn's Motion for Summary Judgment (Doc. 15), and the Motion for Summary Judgment filed by Defendants Baxter County, Arkansas, and Baxter County Judge Mickey Pendergrass (Doc. 18) are both **GRANTED IN PART AND DENIED IN PART** as follows:

- Plaintiffs are entitled to a judgment against Defendants Baxter County, Arkansas, and Judge Pendergrass in his official capacity, awarding Plaintiffs declaratory and injunctive relief, as well as nominal damages.
- Plaintiffs' claims against Judge Pendergrass in his individual capacity are **DISMISSED WITH PREJUDICE** under the doctrine of qualified immunity.

Judgment will be entered contemporaneously with this Order.

**IT IS SO ORDERED** on this 12th day of November, 2015.

/s/ Timothy L. Brooks

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE